## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ROYL GARAGE, LLC and COURTNEY HANSEN, | |
| Plaintiffs, | Civil Action File No. |
| v. | |
| MIGHTY OAK FINANCIAL LLC, MARCUS WHITESIDES, and CRAIG THOMAS, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

NOW COME Plaintiffs ROYL Garage, LLC ("ROYL") and Courtney Hansen (collectively, "Plaintiffs"), by and through counsel, for their complaint against Defendants Mighty Oak Financial LLC ("Mighty Oak"), Marcus Whitesides ("Whitesides"), and Craig Thomas ("Thomas") (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.     This is an action for, among other claims, violation of Georgia's criminal usury laws, conversion, defamation, and intentional interference with business relationships. As set forth below, Defendants held themselves out as reputable financial lenders who offered to finance, in part, the production of the

popular television show *Ride of Your Life with Courtney Hansen*, which is produced and shot on location in Georgia. But Defendants were not reputable. Instead, they unlawfully and surreptitiously charged Plaintiffs interest at 10% ***per day***. This exceeds the legally allowable interest rate of 5% per month ***by more than 295%***. Defendants then unlawfully broke into Plaintiffs' garage and stole property worth in excess of $200,000. Even worse, Defendants then defamed Plaintiffs publicly and spread false information concerning the Plaintiffs and the show. Defendants' misconduct has significantly damaged Plaintiffs.

## PARTIES

2.    Plaintiff ROYL Garage, LLC, is a limited liability company organized under the laws of Florida with its principal place of business in Naples, Florida. Plaintiff Courtney Hansen, an individual who resides in the State of Florida, is the sole member of ROYL Garage, LLC.

3.    Plaintiff Courtney Hansen is an individual resident of Collier County, Florida.

4.    Defendant Mighty Oak Financial LLC ("Mighty Oak") is a Georgia Domestic Limited Liability Company. Mighty Oak Financial is registered to do business in Georgia and can be served with process through its registered agent, Marcus Whitesides, at 1880 West Oak Parkway, Suite 103, Marietta, Georgia 30062.

2

Upon information and belief, Defendant Marcus Whitesides ("Whitesides") is the sole member of Mighty Oak and is a resident of Georgia.

5.    Defendant Whitesides is an individual resident of Georgia. He can be served with process at 1880 West Oak Parkway, Suite 103, Marietta, Georgia 30062, or wherever he may be found.

6.    Defendant Craig Thomas ("Thomas") is an individual resident of Georgia. He can be served with process at 641 Tabbystone Street, Marietta, Georgia 30064, or wherever he may be found.

7.    Upon information and belief, Defendant Mighty Oak is a mere alter ego, instrumentality, and/or business conduit for Whitesides and Thomas, and the corporate form should be disregarded.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interest and costs, and it is between citizens of different states.

9.    This Court has personal jurisdiction over Whitesides and Thomas because they each are citizens of Georgia and, upon information and belief, reside in this District.

10.    This Court has personal jurisdiction over Mighty Oak because it is registered to do business in Georgia and has a Registered Agent in this District.

11.    Venue is proper in this Court pursuant to pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

12.    Plaintiff Courtney Hansen is the executive producer and star of the television series, *Ride of Your Life with Courtney Hansen* ("Ride of Your Life"). Ride of Your Life is a reality television series that follows an all-star team of custom car builders who have come together to work on custom automobiles to give to deserving individuals who have faced setbacks or tragedies in their lives. Ride of Your Life airs on Motortrend TV and streams online on Motortrend+. Plaintiff ROYL Garage, LLC is Ms. Hansen's production company and entered into various transactions, such as sponsor deals, in connection with the production of Ride of Your Life.

13.    Ride of Your Life is shot on location in both Marietta and Tucker, Georgia where Plaintiffs' team custom builds the vehicles.

14.    Ride of Your Life and Ms. Hansen are sponsored by some of the most renowned names in the custom automotive world, including, but not limited to, Hagerty, Castrol, Continental, Optima Batteries, Magnaflow Exhaust, Covercraft,

Blueprint Engines, Ford Motor Company, Classic Industries, Original Parts Group, and Kicker Audio.

15.    In or about April 2021, during the filming of Season 1 of Ride of Your Life, Ms. Hansen was introduced to Defendants Mighty Oak Financial, Whitesides, and Thomas who offered to assist funding the production. Defendants advised Plaintiffs that they would be willing to lend Plaintiffs funds to be used in connection with the show's production. Specifically, after Defendants toured Plaintiffs' facilities, the parties discussed Defendants loaning Plaintiffs $150,000 at 10% per annum to provide payroll and automobile parts necessary to produce the show. After agreeing to these terms, Defendants asked Ms. Hansen to have her lawyer draw up a promissory note that was consistent with the parties' agreement.

16.    On or about April 10, 2021, Plaintiffs presented to Defendants a draft Promissory Note prepared by Ms. Hansen's attorneys that was consistent with the terms that the parties had previously discussed. Specifically, in the associated cover email transmitted the draft promissory note, Plaintiffs made clear that Defendants would loan Ms. Hansen $150,000 with a ***fixed interest rate at 10% per annum*** as the parties had orally discussed. Defendants stated that they would respond to Plaintiffs' proposal shortly.

17.    On or about April 14, 2021, Defendants Mighty Oak Financial, Whitesides, and Thomas, presented Plaintiffs with a different promissory note drafted by a non-lawyer assistant associated with Mighty Oak Financial. Defendants' Promissory Note, at first blush, looked similar to Plaintiffs' proposal and the terms the parties had discussed. For example, under both promissory notes, Defendants would lend Plaintiffs $150,000. However, unbeknownst to Plaintiffs at the time, the terms of Defendants' Promissory Note were usurious and violated Georgia law because they purport to charge Plaintiffs interest at the rate of *10% per day.* Ms. Hansen did not notice Defendants had switched the language of Plaintiffs' proposed promissory note and altered the parties' oral agreement and would be charging this usurious and unlawful interest rate at the time she executed the Promissory Note. Accordingly, Defendants and Plaintiffs executed the Promissory Note on or about April 14, 2021.

18.    On or about May 4, 2021, Defendants Mighty Oak Financial, Whitesides and Thomas, on the one hand, and Plaintiffs, on the other, entered into an Amended Promissory Note. Under terms of the Amended Promissory Note, Defendants would lend Plaintiffs an additional $150,000. Ms. Hansen understood this Amended Promissory Note to be on the same terms that the parties had discussed orally and which were included in her prior written communications with

Defendants, *i.e.* at an interest rate of 10% per annum. However, unbeknownst to Ms. Hansen at the time, the terms of the Promissory Note were usurious and violated Georgia law because they purport to charge Plaintiffs interest at the rate of **10% per day.** Ms. Hansen did not notice Defendants would be charging this usurious and unlawful interest rate at the time she executed the Amended Promissory Note.

19.     The interest rates in the Promissory Note and the Amended Promissory Note violate O.C.G.A. § 7-4-18(a) which provides that no loan shall charge "any rate of interest greater than 5 percent per month." The Georgia Supreme Court has held that any loan violating this section is illegal and results in the lender's forfeiture of certain benefits of the loan, including all interest. Since Mighty Oak holds itself out as a financial institution, knowledge of such financial regulations is imputed to it and its employees. Thus, when Mighty Oak made two separate loans to Plaintiffs with the egregiously usurious interest rate of "10% per day", Defendants intentionally deceived Plaintiffs in order to manipulate and take advantage of them. Plaintiffs justifiably relied on Mighty Oak's representations and were damaged as a result.

20.     The Promissory Note and the Amended Promissory Note stated that the loans are collateralized by assets owned by ROYL Garage, LLC, specifically, a 1969

Chevrolet Camero, a 1978 Ford F-100, a 1967 Chevrolet Chevelle, a 1973 Chevrolet El Camino, a 1965 Pontiac GTO Convertible, and a 1987 Buick Grand National.

21.    In early September 2021, Defendants gained unlawful access to the ROYL Garage in Marietta. On information and belief, they conspired to do so with then-employees of Ride of Your Life and an ex-employee who had been terminated. Once inside, Defendants stole vehicles and other property belonging to Plaintiffs, including: a 1965 GTO convertible, a Ford F100, and six car titles (1969 Camaro, 1965 GTO, 1987 Grand National, 1967 Chevelle convertible, 1973 El Camino, and 1978 F100/F150) (collectively, the "Property"). On information and belief, Defendants disabled cameras located in the garage and removed a memory card from them in order to cover up their theft. Defendants were also witnessed taking a 1969 Camaro owned by Plaintiffs from property located across the street where it was being stored.

22.    Upon information and belief, this was not the first time that one or more Defendants obtained unlawful access to Plaintiffs' garage. Upon information and belief, shortly prior to the September 2021 theft, Defendant Whitesides entered the garage while intoxicated and inquired whether individuals who were working there would be leaving soon.

23.    Likewise, upon information and belief, Defendant Whitesides spoke to employees of Ride of Your Life and inquired about the title for another vehicle, a Ford Bronco, and suggested that Defendants would (improperly) have the vehicle picked up from its proper location in Alabama (where certain work was to be performed by one of the show's sponsors) and shipped to Georgia. Upon information and belief, Defendant Whitesides was conspiring with a terminated employee from Ride of Your Life to attempt to steal the Ford Bronco.

24.    Plaintiffs filed a police report regarding the stolen vehicles on September 2, 2021.

25.    At no point in time prior to stealing Plaintiffs' Property did Defendants ever request payment of the outstanding principal or interest on the loans secured by Promissory Note or the Amended Promissory Note or issue any notice of default under the Promissory Note or Amended Promissory Note or obtain any judgment that they were entitled to possession of the Property.

26.    Plaintiffs remain ready, willing, and able to repay Defendants their $300,000 in principal offset by the amount of Plaintiffs' damages due to Defendants' conduct as alleged herein and to be proven at trial. Defendants have been unwilling to accept this repayment or to tender the Property to Plaintiffs. Plaintiffs have repeatedly demanded the return of the Property, including as recently as February

10, 2023. Defendants have not only steadfastly refused to return the Property to Plaintiffs, but have refused to allow Plaintiffs to even view the vehicles to determine if they have been damaged.

27.    On information and belief, Defendants altered and significantly damaged the Property while it was wrongfully in their possession which will need to be repaired at Plaintiffs' expense, including, but not limited to, mechanical damage to their motors, paint, worn tires, etc. Moreover, Defendants negligently stored at least one of the vehicles outdoors in the humidity and rain, were driving the vehicles for their own personal use (including claiming that they were their personal vehicles at car shows) and, on information and belief, modifying them. At least some of the damage that Defendants caused is depicted in the following photographs:



28.    Defendants' theft of these vehicles not only harms Plaintiffs through the deprivation of their Property, but it hurts both the well-deserving individuals to whom these vehicles were supposed to be given and also substantially damages the reputation of Ride of Your Life in the industry.

29.    Defendants did not stop at stealing Plaintiffs' Property. Defendants also intentionally defamed Plaintiffs in a manner that that is causing irreparable harm to

their reputation and goodwill. Outlined below are statements (the "Defamatory Statements") that Defendants made to numerous individuals with whom Plaintiffs work or otherwise transact business, including their builders, partners, community members, and the rightful recipients of vehicles built on Ride of Your Life.

30.    These Defamatory Statements were false and made intentionally or negligently with the goal of promoting Defendants' interests and harming Plaintiffs.

31.    Moreover, the Defamatory Statements arise to defamation *per se* under Georgia law because they charge Plaintiffs with crimes punishable by law and refer to Plaintiffs' professions and are calculated to injure Plaintiffs.

32.    Through the Defamatory Statements, Defendants engaged in a campaign of defamation against Plaintiffs, including through the following statements: (a) Courtney Hansen and Denyse from Mac's restaurant are in cahoots, that Ride of Your Life was a fraud, that Ms. Hansen was stealing money from people, and there is no show; (b) ROYL Garage was shut down; (c) The garage and show have failed; (d) Courtney Hansen has no idea what she is doing and was doing cocaine; (e) The television show is not happening so Mighty Oak was selling the 1965 GTO; (f) that the 1965 GTO was built for Whitesides on the show but that he modified the suspension of the vehicle because he did not like the Air Ride system;

and (g) that Ms. Hansen sat upstairs at Mac's restaurant because she was doing cocaine.

33.    On information and belief, Defendant Whitesides made additional inappropriate comments to members of the community about Ms. Hansen, including that he intended to have sexual relations with Ms. Hansen, who is married.

34.    None of the Defamatory Statements were framed as being only Defendants' opinions at the time that they were made.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF GEORGIA'S USURY LAWS
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

35.    Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

36.    As set forth above, Defendants unlawfully and usuriously violated O.C.G.A. § 7-4-18(a) by charging an interest rate that amounted to a monthly percentage rate *in excess of 300%*. O.C.G.A. § 7-4-18(a) makes unlawful monthly percentage rates exceeding 5%.

37.    Defendants held themselves out to Plaintiffs as a lawful financial institution and, as such, knew or should have known that the interest that they were charging Plaintiffs was unlawful and in excess of 5% monthly.

13

38.     As a direct and proximate result of Defendants' violation, Plaintiffs have been injured and suffered damages in an amount to be determined at trial. But, at minimum, Defendants shall be prohibited from collecting any interest from Plaintiffs on the usurious loans.

## COUNT II
## CONVERSION
## (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

39.     Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

40.     Defendants willfully and unlawfully took and converted the Property for their own use and to the detriment of Plaintiffs.

41.     Defendants' conversions of the Property has actually and proximately caused damages to Plaintiffs in an amount to be proven at trial.

42.     Plaintiffs are entitled to punitive damages as a result of these tortious actions in an amount to be determined by the jury.

## COUNT III
## DEFAMATION AND DEFAMATION PER SE
## (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

43.     Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

44.    Georgia recognizes that certain statements constitute defamation *per se*. These statements are so egregious that they will always be considered defamatory and are assumed to harm the Plaintiffs' reputation, without further need to prove that harm. Under Georgia statutes, a statement is defamatory *per se* if it: charges another person with a crime punishable by law; charges another person "with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;" or refers to the trade, office, or profession of another person, and is calculated to injure him. *See* O.C.G.A. § 51-5-4.

45.    Defendants "Defamatory Statements" are defamatory and constitute defamation *per se*.

46.    Defendants intentionally made these false Defamatory Statements, which are unprivileged.

47.    Defendants' Defamatory Statements were an actual and proximate cause of Plaintiffs' harm in an amount to be proven at trial.

### COUNT IV
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

48.    Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

49.    Through the acts set forth in detail above, Defendants improperly and without privilege interfered in Plaintiffs' business relationships, including without limitation, Plaintiffs' sponsors, broadcaster, Mototrend TV, industry colleagues, and viewers.

50.    Defendants' conduct as set forth above was willful and knowing with the intent to injure Plaintiffs.

51.    Defendants' intent in engaging in the conduct set forth above was to interfere with Plaintiffs' business relationships.

52.    Defendants' interference was an actual and proximate cause of Plaintiffs' damage in an amount to be proven at trial.

## COUNT V
## VIOLATIONS OF GEORGIA CIVIL RICO
## (BY PLAINTIFFS AGAINST DEFENDANTS)

53.    Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

54.    O.C.G.A. § 16-14-6(c) creates a private cause of action for violations of O.C.G.A. § 16-14-4 (the "Georgia RICO Act").

55.    Each of the Defendants engaged in a pattern of racketeering activity, as defined in O.C.G.A. § 16-14-3 (5)(A)(xii) by, *inter alia*:

a.    repeated and numerous acts of theft by taking in violation of O.C.G.A. § 16-8-2 because Defendants have unlawfully taken the property of Plaintiffs, including the Property, with the intention of depriving Plaintiffs of the Property;

b.    repeated and numerous acts of theft by deception in violation of O.C.G.A. § 16-8-3 because Defendants have obtained the property of Plaintiffs through deceitful means or artful practice with the intention of depriving Plaintiffs of the property; and

c.    repeated and numerous acts of theft by conversion in violation of O.C.G.A. § 16-8-4 because Defendants have knowingly converted the Property of Plaintiffs for their own use.

56.    Defendants violated the Georgia RICO Act by acquiring, through a pattern of racketeering activity, an interest in or control of the Property of Plaintiffs.

57.    Defendants violated the Georgia RICO Act by maintaining, through a pattern of racketeering activity, an interest in or control of the Property of Plaintiffs.

58.    Defendants violated the Georgia RICO Act by conspiring to acquire and maintain, through a pattern of racketeering activity, an interest in or control of the Property of Plaintiffs.

59.    Defendants violated the Georgia RICO Act by endeavoring to acquire and maintain, through a pattern of racketeering activity, an interest in or control of the Property of Plaintiffs.

60.    Defendants' use of the U.S. mail and telephone lines to defraud Plaintiffs, charge unlawful and usurious interest, and convert the Property are predicate acts constituting racketeering activity under O.C.G.A. § 16-14-3, such that Defendants violated 18 U.S.C. §§ 1341 and 1343 in furtherance of their enterprise.

61.    The pattern of racketeering activity set forth above occurred after July 1, 1980, within four years of each other, and within the five years of the filing of this claim.

62.    By reason of the foregoing, Defendants have conducted and participated in an enterprise or enterprises through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b) and Plaintiffs represent they are entitled to recover damages from Defendants.

63.    Defendants' violations of the Georgia RICO Act have actually and proximately caused damages to Plaintiffs.

64.    Because of Defendants' violations of the Georgia RICO Act, Plaintiffs are entitled to an award of treble damages from Defendants, pursuant to O.C.G.A. § 16-14-6(c), in an amount to be proven at trial.

65.     Because of Defendants' violations of the Georgia RICO Act, Plaintiffs are also entitled to recover from them Plaintiffs' reasonable attorney's fees and the costs of investigation and litigation that Plaintiffs have reasonably incurred, in an amount to be proven at trial.

66.     Because of Defendants' violations of the Georgia RICO Act, Plaintiffs are also entitled to punitive damages from them in an amount to be proven at trial.

## COUNT VI
## CIVIL CONSPIRACY
## (BY PLAINTIFFS AGAINST DEFENDANTS)

67.     Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

68.     As detailed above, Defendants agreed and planned with each other to intentionally defraud Plaintiffs, charge unlawful and usurious interest, and convert the Property using the various methods described herein.

69.     Each of the Defendants took acts in furtherance of this conspiracy.

70.     There is no justification for Defendants' wrongful conduct, which is improper and taken for commercial and/or personal benefit.

71.     Defendants' conduct has proximately and directly caused damages to Plaintiffs in an amount to be proven at trial.

## COUNT VII
## UNJUST ENRICHMENT
## (BY PLAINTIFFS AGAINST DEFENDANTS)

72.     Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

73.     As detailed above, benefits were conferred by Plaintiffs upon each of Defendants which resulted in their unjust enrichment.

74.     Each of Defendants have been unjustly enriched at the expense of Plaintiffs and, in fairness and good conscience, Defendants, jointly and severally, must reimburse Plaintiffs in an amount to be proven at trial.

## COUNT VIII
## PUNITIVE DAMAGES
## (BY PLAINTIFFS AGAINST DEFENDANTS)

75.     Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

76.     Defendants' actions demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences.

77.     Defendants undertook these actions with the specific intent to cause harm to Plaintiffs.

78.     Punitive damages are necessary to punish, penalize, or deter Defendants.

79.     Plaintiffs are entitled to an award of punitive damages from Defendants, pursuant to O.C.G.A. §§ 16-14-6(c) and 51-12-5.1, in an amount to be proven at trial.

## COUNT IX
## ATTORNEY'S FEES
## (BY PLAINTIFFS AGAINST DEFENDANTS)

80.     Plaintiffs repeat and re-allege the allegations stated above as if fully set forth herein.

81.     By their willful and malicious conduct, Defendants have acted in bad faith and have caused Plaintiffs unnecessary trouble and expense.

82.     Accordingly, Plaintiffs are entitled to recovery of the costs of this litigation, including, but not limited to, reasonable attorney's fees pursuant to O.C.G.A. §§ 13-6-11 and 16-14-6(c) and other applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that final judgment be entered in their favor and against Defendants as follows:

(a)     Judgment against Defendants on each applicable count of this Complaint;

(b)    Compensatory and actual damages as a result of Defendants' conduct;

(c)    Punitive and treble damages as a result of Defendants' conduct;

(d)    Attorney's fees and costs of litigation; and

(e)    Such other and further relief as is necessary, just, and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request trial by jury as to all triable issues in this case.

Respectfully submitted, this 12th day of April, 2023.

> */s/ Eric S. Fisher*
> Eric S. Fisher
> Georgia Bar No. 250428
> BARNES & THORNBURG LLP
> 3340 Peachtree Road, N.E., Suite 2900
> Atlanta, Georgia 30326-1092
> Telephone: (404) 264-4045
> Facsimile: (404) 264-4033
> EFisher@btlaw.com
>
> Garrett S. Llewellyn (*pro hac vice*
>     application forthcoming)
> BARNES & THORNBURG LLP
> 2029 Century Park East, Suite 300
> Los Angeles, California 90067
> Telephone: (310) 284-3880
> garrett.llewellyn@btlaw.com
>
> *Attorneys for Plaintiffs*